UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**LEXINGTON**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 5:05-24-JMH |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | **MEMORANDUM OPINION AND ORDER** |
| JAMES ALLEN BURNS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**             **       **       **       **       ****

Before the Court is the motion of the defendant to suppress incriminating statements [Record No. 18]. The government responded [Record No. 20] and the Court held an evidentiary hearing on May 26, 2005. After having considered the matter, the Court finds that based on the totality of circumstances, the defendant's motion should be denied.

## I. FACTUAL BACKGROUND

On December 30, 2004, at 10:33 p.m., the defendant was arrested for wanton endangerment by the Lexington Police Department. The night the defendant was arrested, he was *Mirandized* and refused to make any statements.

Just prior to the defendant's arrest, state and federal authorities were investigating the defendant based on a tip from an informant that the defendant planned to rob Lex-Linc bank in

1

Lexington and sought assistance from the informant and the informant's friend.  The defendant allegedly asked the informant's friend to obtain firearms for the robbery, but the friend did not want to be involved in the robbery or in helping the investigation.  On December 30, 2004, state and federal authorities coordinated a sting operation to apprehend the defendant attempting to obtain firearms for the planned robbery.

The defendant was arrested during the course of the sting operation because the informant gave a distress signal.  The informant alleges that the defendant threatened him with a knife.

On January 3, 2005, prior to being appointed an attorney and before his initial appearance,[1] the defendant was interviewed at the Fayette County Detention Center by Lexington Police Detective Stowers ("Det. Stowers") and FBI Special Agent Gabriel ("S.A. Gabriel").  During the interview, the defendant made incriminating statements that are the subject of the motion.  The interrogation was taped and played in its entirety at the suppression hearing.[2]

At the suppression hearing, the defendant testified that the officers made false promises of leniency because they promised that

---

[1] On January 4, 2005, the defendant had an initial appearance in state court and was appointed an attorney.  The federal complaint was filed on February 6, 2005 and the defendant was indicted on February 3, 2005.

[2] The Court notes that it is not regular practice for federal agents to tape interrogations, but because Detective Stowers from the Lexington Police Department also questioned the defendant, the interrogation was recorded.

if the defendant confessed, he would only be charged with conspiracy to commit robbery and not with any firearms violations. The defendant was eventually charged with conspiracy to possess, use or carry a firearm during a crime of violence, in addition to conspiracy to commit bank robbery. The defendant stated he relied on the officer's representations of leniency in making the decision on whether to make a statement.

The defendant also testified that he suffered from mental health issues and substance abuse and that prior to the arrest, he had been on a drinking binge. The defendant introduced the pre-sentence report for a prior federal offense that stated that the defendant claimed he had attempted suicide in the past. The pre-sentence report also noted that the defendant stated he had taken Thorazine in the past and had suffered from depression. The defendant also introduced an October 20, 2004 letter from the defendant's counselor directing the defendant to have a psychiatric evaluation and attend at least six therapy sessions. The letter was seized on the night of the defendant's arrest.

The government introduced the testimony of S.A. Gabriel and played the entire tape of the interrogation. The interrogation lasted about an hour. S.A. Gabriel testified that the defendant was *Mirandized* at the beginning of the interrogation and that the defendant understood his rights, but chose not to invoke them. Under seal, the government introduced the extensive criminal

history of the defendant.  On cross, the defendant admitted that he had plead guilty to several prior crimes, had given statements to the police before, and had invoked his rights before.

S.A. Gabriel testified that he did not make any promises of leniency to the defendant, instead only promising to recommend leniency.  The agent testified that he attempted to recommend leniency to the U.S. Attorney's Office, but did not actually recommend leniency because he was immediately told that the Office intended to prosecute to the fullest extent.

## II. APPLICABLE LAW

Although the defendant was *Mirandized*, the giving of such warnings does not prevent a subsequently coerced confession from being inadmissible. *United States v. Brown*, 66 F.3d 124, 126 (6th Cir. 1995) (holding that "[r]egardless of whether [the defendant] received *Miranda* warnings, [the] statement would be inadmissible on due process grounds if it were given involuntarily").  Once the defendant has put the issue in controversy, the government bears the burden to establish voluntariness. *United States v. Mahan*, 190 F.3d 416, 422 (6th Cir. 1999).

In order to determine whether the statements were involuntarily given, the Court considers: 1) whether the police activity was objectively coercive; 2) whether the coercive activity was sufficient to overbear the will of the defendant; and 3) whether "the alleged police misconduct was the crucial motivating

4

factor in the defendant's decision to offer the statement." *United States v. Johnson*, 351 F.3d 254, 260 (6th Cir. 2003).  The Court looks at the totality of circumstances in assessing whether the statements were voluntarily made. *United States v. Finch*, 998 F.2d 349, 356 (6th Cir. 1993).

## III. ANALYSIS

Based on the totality of circumstances, the Court finds that the defendant's statements were voluntary because the interrogators did not use objectively coercive behavior.  The Court further finds that the officers' conduct was not sufficient to overbear the will of the defendant.  Finally, the Court finds that the conduct of the police was not the crucial motivating factor for the defendant in deciding whether to offer the statements.

## A.   OBJECTIVELY COERCIVE POLICE CONDUCT

The defendant argues that the statements were involuntarily made because: 1) the interrogators made false promises of leniency; 2) the defendant was incarcerated for over three days without an initial appearance; 3) the defendant was not allowed to speak to an attorney; and 4) the defendant was suffering from mental health problems.  In combination with each other, these factors, the defendant argues, indicate that the confession was obtained by police coercion.  The Court disagrees.

### 1.   FALSE PROMISES OF LENIENCY

In order for police promises of leniency to be coercive, the

promises must be broken or illusory.  *Johnson*, 351 F.3d at 262.
Illusory promises are those that lack substance because they do not
commit the police to an undertaking or refraining from any action.
*Id.* at n.1.

Specifically, the defendant argues that the officers made a
false promise to not charge the defendant with any firearms
violations if he confessed to conspiracy to commit robbery.  The
promise was false, asserts the defendant, because the defendant was
subsequently charged with a firearms violation.

The Court finds that upon reviewing the taped interrogation,
the officers did not make false promises of leniency because the
officers merely stated they would *recommend* leniency to the
prosecutors and clearly stated that the ultimate discretion for the
charging decision lied with the prosecutors.  For example, S.A.
Gabriel made statements like "we can make a recommendation to the
U.S. Attorney's Office to make two of those [charges] go away" and
"I can't make any promises, I can't make any guarantees, but you
know that prosecutors listen to what cops and feds say."[3]
Statements like these are not false promises of leniency because
the officers tell the defendants that prosecutors make the ultimate

---

[3] S.A. Gabriel also stated that "I can make a recommendation
to the prosecutor ... and they're the ones, I do not have that
authority, I do not have that power.  Okay, I'm being completely
honest with you, I can't make that decision."

charging decisions.[4]  *United States v. Wiley*, Nos. 04-5601 & 04-5696, at *7 (6th Cir. May 26, 2005) (unpub. slip op'n) (finding that "the detectives' alleged promise to inform the prosecutor of Wiley's cooperation did not render the confession coerced, even if the detectives suggested that such cooperation may have a positive impact on [the defendant's] sentence").

The defendant also argues that S.A. Gabriel made false promises when he stated he would recommend leniency to the U.S. Attorney's Office.  S.A. Gabriel testified that he did not tell the U.S. Attorney's Office that he recommended leniency because when he attempted to tell the prosecutors his recommendation, the prosecutors told him of the plans to prosecute to the fullest extent.  Thus, the statements were not false when made and the promise to recommend was not followed through with because S.A. Gabriel felt as though a recommendation would have been futile. Further, even if the Court found that this statement was false, as explained below, the Court finds that this conduct was not sufficient to overbear the will of the defendant and that the

---

[4] The defendant urges the Court to adopt the reasoning of the Fourth Circuit in *Grades v. Boles*, 398 F.2d 409 (4th Cir. 1968). In *Grades*, the court that held that whether the statements were "false" instead of merely equivocal was determined from the defendant's point of view.  *Id.* at 412.  This Court declines to adopt the reasoning of *Grades*, but notes that even if the Court analyzed the circumstances in this manner, the statements would still be voluntary due to the fact that the Court finds the police conduct at issue was not sufficient to overbear the will of the defendant.

conduct was not the crucial motivating factor in deciding whether to confess.

The defendant also argues that S.A. Gabriel made false representations when he stated "[a] condition of your parole is yeah, you're suppose[d] to be forthcoming in any investigation ... Yeah ... in general terms, I've never heard of an agreement where you [are] not supposed to ... hinder justice or investigation." S.A. Gabriel made this statement in response to the defendant's question concerning whether the terms of his parole forbade cooperation in any criminal investigations.

The Court finds that the conditions of parole do not explicitly state that the defendant must cooperate with an ongoing investigation, but that the terms also do not state that the defendant shall not cooperate with an investigation. Likely, the defendant was confused by the parole term that forbids the defendant from acting as an informant. Thus, the Court finds that S.A. Gabriel was merely attempting to clear up confusion and did not make a false representation. Even if the Court found otherwise, as stated below, the defendant's motion would still be denied because the Court finds that the conduct at issue was not sufficient to overcome the defendant's will or act as a crucial factor in the defendant's decision to make a statement.

**2.    DELAY IN INITIAL APPEARANCE**

The defendant also asserts that the statements were

8

involuntarily given because there was a delay before being brought before a judicial officer for an initial appearance.

The defendant was arrested on December 30, 2004, on state charges, and the interrogation was on January 3, 2005. He was brought before a state court judge on January 4, 2005, three and a half days after he was arrested. Although unreasonable delay in the initial appearance may be a factor to weigh in determining voluntariness, *United States v. Mayes*, 552 F.2d 729, 734 (6th Cir. 1977), in the case at hand, the delay was not unreasonable because the timing of the arrest occurred during the weekend and over the state holiday and he was interrogated on the first business day after his arrest. *United States v. Johnson*, No. 98-3183, 2000 WL 712385, at *6 (6th Cir. May 24, 2000) (unpub.) (holding that delay of a week did not make confession involuntary where the defendant was interrogated on the fourth day which was the first business day after his arrest); *see also United States v. Christopher*, 956 F.2d 536, 539 (6th Cir. 1991) (holding that delay in appearing before the magistrate was not unreasonable where the defendant was advised of his rights, was familiar with the justice system, and there was no evidence of intimidating police conduct).

### 3.   NO ATTORNEY PRESENT

The defendant argues that another fact weighing in favor of suppression is the fact that he was not permitted to speak to an attorney during the interrogation. While this fact is significant

9

if the defendant had requested an attorney and been denied, this is not the case.   Even though he was apprized of his right to an attorney twice and had extensive experience with the criminal justice system, the defendant never requested to speak to an attorney.   *United States v. Weekley*, 130 F.3d 747, 751 (6th Cir. 1997) (noting that the defendant "did not assert a desire to be represented by counsel or to remain silent at any time"); *Wiley*, Nos. 04-5601 & 04-5696, at *6* (finding that the defendant's failure to request an attorney negated his argument that the confession was involuntary because the defendant did not have an attorney present).   Consequently, the Court finds that the defendant knew he had a right to an attorney and simply chose not to request one. Thus, the fact that an attorney was not present does not weigh in favor of suppression.

### 4.   MENTAL HEALTH ISSUES

Finally, the defendant argues that the interrogators were aware of the defendant's mental health issues that negatively affected his ability to voluntarily confess.   In support, the defendant introduced the letter from his counselor stating the defendant needed a psychiatric evaluation and to attend at least six sessions.   The defendant also submitted the pre-sentence report from a prior federal crime that stated that the defendant claimed to suffer from depression and once attempted suicide.   In response, S.A. Gabriel testified that he was not aware of the existence of

the letter seized from the defendant's house on the night of the arrest.

The Supreme Court has held that a defendant's mental health issues alone, without evidence of police conduct amounting to coercion, is insufficient to find statements were involuntarily elicited. *Colorado v. Connelly*, 479 U.S. 157, 164 (1986) (holding that "[a]bsent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law"). As the Court has found there was no evidence of police coercion, the fact that the defendant may have mental health issues is insufficient to find the confession was involuntary.

**B.   CONDUCT SUFFICIENT TO OVERBEAR WILL OF DEFENDANT**

In determining whether the conduct of the police was sufficient to overbear the will of the defendant, relevant facts are "defendant's age, [his] education and intelligence, [his] physical condition and emotional state, the use of physical punishment, and the duration and location of the questioning." *United States v. Welch*, No. 93-4043, 1994 WL 514522, at *4 (6th Cir. Sept. 19, 1994) (unpub.). The defendant argues that the conduct of the interrogators was sufficient to overbear his will. Assessing the totality of the circumstances surrounding the interrogation, the Court finds that the conduct of the officers was not sufficient to overcome the defendant's will.

11

First, the defendant was an adult; the interrogation was short in duration; and no physical coercion was present. Also, the government submitted evidence of the defendant's prior experience with the criminal justice system through the defendant's extensive criminal record, a factor weighing against suppression. *United States v. Haynes*, 301 F.3d 669, 684 (6th Cir. 2002) (finding the confession voluntary where the defendant "was advised of his constitutional rights and admitted to having ample experience in the criminal justice system"); *Ledbetter v. Edwards*, 35 F.3d 1062, 1069 (6th Cir. 1994) (holding that prior criminal justice experience is a factor weighing against suppression); *Wiley*, Nos. 04-5601 & 04-5696, at *6 (noting the defendant's experience with the criminal justice system showed the defendant's apprehension of his constitutional rights). Further, the government introduced evidence that the defendant cooperated with the police several times on other crimes, thus showing the defendant's awareness of the inter-workings of the criminal justice system.

Additionally, the defendant was advised of his rights twice, once upon being arrested and again right before the interrogation at issue. *Wiley*, Nos. 04-5601 & 04-5696, at 6 (holding that factors weighing in favor of finding the confession was voluntary were the facts that the defendant was *Mirandized* and did not request an attorney).

While the defendant testified that he has mental health issues

and substance abuse problems, the Court finds that assessing the totality of circumstances, the conduct of the police was not sufficient to overbear the will of the defendant.

## C.   CRUCIAL MOTIVATING FACTOR

The defendant asserts that the conduct of the police was the crucial motivating factor in his decision to offer the incriminating statements, but the Court finds otherwise.  The interrogation tape reveals that the defendant asked the officers whether cooperating with the police would result in going back to the prison in Eddyville rather than to federal prison; a conversation initiated by the defendant and evincing motivation on the part of the defendant to cooperate with the investigation.

Further, in listening to the entire tape of the interrogation, it is clear that the defendant, rather than providing a confession, desired to "tell his side of the story."  As the government points out, in order to obtain a conviction, the jury would have to discount several of the defendant's statements that were made in the interrogation because they were exculpatory.  *See e.g. United States v. Selby*, Nos. 93-1424 & 93-1455, 1994 WL 416262, at *5 (6th Cir. Aug. 8, 1994) (affirming the lower court's finding of voluntariness and stating that an important fact weighing against suppression was that the defendant made exculpatory statements) (unpub.).  Thus, the Court finds that the defendant's crucial motivating factor in making the statements was not the police

13

conduct in question, but instead, the defendant's desire to exculpate himself and to be sent to the prison of his choosing.

## IV. CONCLUSION

Based on the totality of circumstances, the Court finds that the government has met its burden in showing that the defendant's confession was voluntary. The interrogation was short and no physical coercion was present. The officers did not make false promises of leniency and, even if the Court found that false promises were made, the defendant, an adult experienced in the criminal justice system, was fully aware of his right to remain silent or to have an attorney present, but chose to speak in order to "tell his side of the story" and to be sent to Eddyville instead of federal prison.

Accordingly, and for the foregoing reasons, **IT IS ORDERED** that the defendant's motion to suppress [Record No. 18] be, and the same hereby is, **DENIED.**

This the 10th day of June, 2005.



Signed By:

___*Joseph M. Hood*___

**United States District Judge**